IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JUAN ANTONIO VELAZQUEZ,

             Petitioner,            No. 2:11-cv-1461 MCE GGH P

        vs.

P.D. Brazelton, Acting Warden,[1]     ORDER &

            Respondent.      FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 2009, petitioner was convicted by a jury of first degree murder in 2009 in San Joaquin County Superior Court and sentenced to a term of 25 years to life with the possibility of parole. Petition, p. 1. Petitioner challenges his conviction on the ground that his federal due process rights were violated by the trial court's failure to provide a jury instruction on involuntary intoxication. Petition, p. 4.

---

[1] Respondent identifies Robert H. Trimble as the current acting warden at Pleasant Valley State Prison at the time of filing the Answer, but then goes on to ask the court to substitute Michael Stainer as warden in place of James A. Yates under Fed. R. Civ. P. 25(d). Answer, p. 1, note 1. In light of this confusion, the court has ascertained that P.D. Brazelton is the current acting warden.

II.  <u>AEDPA</u>

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  <u>Harrington v. Richter</u>, 131 S.Ct. 770, 785 (2011). Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  <u>Id</u>. at 784-785, citing <u>Harris v. Reed</u>, 489 U.S. 255, 265, 109 S.Ct. 1038 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis).  "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."  <u>Id</u>. at 785.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows:  "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'"  <u>Harrington</u>, <u>supra</u>, 131 S.Ct. at 785, citing <u>Williams v. Taylor</u>, 529 U.S. 362, 410, 120

2

S.Ct. 1495 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786, citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140 (2004). Accordingly, "a habeas court must determine what arguments or theories supported or . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id., citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166 (2003).

        The undersigned also finds that the same deference is paid to the factual determinations of state courts. Under § 2254(d)(2), factual findings of the state courts are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination. A petitioner must show clearly and convincingly that the factual determination is unreasonable. See Rice v. Collins, 546 U.S. 333, 338, 126 S.Ct. 969, 974 (2006).

\\\\\

\\\\\

\\\\\

III.  Factual Background

        In an unpublished opinion, the Third District Court of Appeal provided the factual

background of this case.[2]

FACTUAL BACKGROUND

> In the early morning of March 21, 2008, Neal Singer was drinking
> beer at Jack's Back, a bar in Lodi.  Between 1:30 and 2:00 a.m.,
> Singer played a game of pool with defendant.  After the game,
> Singer and defendant became embroiled in an altercation over a
> $40 pool bet.  Defendant told Singer, "I won, let me get my
> money."  Shortly before closing time the altercation moved outside
> in front of the bar.  Defendant appeared to be drunk and agitated,
> and his eyes were heavy and bloodshot. Singer was acting "drunk
> and obnoxious."
>
> At approximately 2:00 a.m., residents of a nearby apartment
> building were awakened by a disturbance in an adjacent parking
> lot.  Singer was screaming, "Help me, I need help, help me."  The
> residents watched as defendant threw rocks and a piece of concrete
> at Singer, who was lying face down on the ground.  Defendant also
> kicked Singer in the head.  As defendant stood over Singer, he
> said, "I'm going to kill you."  When a resident told defendant to
> leave Singer alone and threatened to call the police, defendant
> responded, "I don't care, call the police."  He then walked slowly,
> in staggered fashion, away from the scene.
>
> Lodi police officers arrived at the scene and found Singer's body
> lying face-down in a pool of blood.  His face had been crushed in.
> An autopsy revealed that Singer died of repeated blows to the head.
> He had sustained at least 56 distinct blunt force traumas.  The
> injuries to the back of his head were likely caused by a 14-pound
> bloody piece of concrete recovered from the scene.  Singer also
> suffered stomping injuries, including an injury bearing the imprint
> of a metal-toed shoe on his face.
>
> An officer responding to the scene noticed defendant walking at a
> hurried pace.  The officer contacted defendant and noticed blood
> on his mouth and alcohol on his breath.  Defendant was arrested
> and transported to jail, where a preliminary alcohol screening
> (PAS) revealed a blood-alcohol level of 0.129 percent.
> Defendant's blood was drawn and tested positive for Valium, a

---

[2] In his petition, to which petitioner appended his exhaustion petition for review to the
state Supreme Court, petitioner relies on the facts as set forth in the appellate court opinion.
Petition, p. 14.

benzodiazepine.[3] [Footnote 1]

An examination of defendant's sweatshirt, shoes, and jeans revealed bloodstains matching Singer's DNA.  The blood on defendant's face also matched that of Singer.  Several areas on the bloody piece of concrete recovered from the scene tested positive for Singer's DNA.  Additionally, acetaminophen pills found in defendant's pockets were similar to those found approximately 20 feet from Singer's body at the crime scene.

**Defense**

Defendant claimed he suffered from a mental disease or defect and/or voluntary intoxication that was inconsistent with harboring specific intent, malice, premeditation, or deliberation.

*2 Dr. Albert Globus testified that defendant had incurred brain damage from separate head injuries that occurred in 1984 and 1999.  Dr. Globus testified that defendant also suffered from severe short-term memory lapses and chronic alcoholism.  According to Globus, defendant had been a heavy drinker since the age of 12[4] and had a history of alcohol-related blackouts.  On one occasion, defendant drank so much that he lay down in the middle of the street, fell asleep, and had to be dragged off the street by his friends.

Defendant told Dr. Globus that he had been drinking beer and tequila shots on the day of the incident, but he did not remember how much alcohol he had consumed that day.[5] He also told Globus that he had illegally purchased an unknown quantity of Valium, a benzodiazepine, on the street and was taking two pills every two hours for the entire day. Based on his examination, Globus opined that the combination of alcohol and benzodiazepines, along with two apparent head injuries incurred during defendant's lifetime, "combined [to] have a very serious impact on [his] memory" and social judgment.

Several of defendant's friends testified as to his character and reputation for peacefulness.

---

[3] [Footnote 1:] "Valium is a prescription medication used to treat seizure disorders and anxiety. It has a short-term impact on memory and motor functions."   People v. Velazquez, 2010 WL 2913042 at *1, *4 (Cal. Ct. App. July 27, 2010).

[4] [Footnote 2]: "At the time of trial in March 2009, defendant was 38 years old." Velazquez,  2010 WL 2913042.

[5] [Footnote 3]: "One of defendant's friends testified that defendant had been drinking continuously from the night of March 19, 2008, until around midnight the next day." Velazquez, 2010 WL 2913042.

1   People v. Velazquez, 2010 WL 2913042 at *1-*2 (Cal. Ct. App. July 27, 2010)(unpublished),

2   review denied (Oct. 13, 2010).

3   Claim- Failure by Trial Court to Instruct Jury on Involuntary Intoxication violated Due Process

4              Specifically, petitioner sets forth his claim to the state Supreme Court,

5   incorporated herein, as posing the issue: "[w]hether the fair trial due process rights guaranteed by

6   the United States Constitution require instruction on voluntary intoxication where a defendant

7   voluntarily ingests alcohol and drugs which, in combination, result in an unexpected condition

8   resulting in violence."   Petition, pp. 4, 12, 15.  Although petitioner concedes that he illegally

9   obtained Valium, it is his argument that since he was voluntarily using it for its "lawful" purpose,

10  i.e., to treat pain, and did not know that in combination with drinking excessive amounts of

11  alcohol, which he also concedes having done, it would lead to violent behavior which he claims

12  never to have engaged in before, he was entitled to an involuntary intoxication jury instruction.

13  Petition, pp. 15-16;  Traverse, p. 4.

14              *Jury Instruction Legal Standard*

15              The habeas corpus petitioner bears the burden of demonstrating the objectively

16  unreasonable nature of the state court decision in light of controlling Supreme Court authority.

17  Woodfern v. Viscid, 537 U.S. 19, 123 S. Ct. 357 (2002).  Specifically, the petitioner "must show

18  that the state court's ruling on the claim being presented in federal court was so lacking in

19  justification that there was an error well understood and comprehended in existing law beyond

20  any possibility for fairminded disagreement."  Harrington, supra, 131 S.Ct. at 786-787.  "Clearly

21  established" law is law that has been "squarely addressed" by the United States Supreme Court.

22  Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008).  Thus, extrapolations of

23  settled law to unique situations will not qualify as clearly established.  See e.g., Carey v.

24  Muscadine, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not permitting state

25  sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear

26  prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly

1  established law when spectators' conduct is the alleged cause of bias injection).  The established

2  Supreme Court authority reviewed must be a pronouncement on constitutional principles, or

3  other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on

4  federal courts.  Early v. Packer, 537 U.S. 3, 9, 123 S. Ct. 362, 366 (2002).

5         The state courts need not have cited to federal authority, or even have indicated

6  awareness of federal authority in arriving at their decision.  Early, supra, 537 U.S. at 8, 123 S.Ct.

7  at 365.  Where the state courts have not addressed the constitutional issue in dispute in any

8  reasoned opinion, the federal court will independently review the record in adjudication of that

9  issue.  "Independent review of the record is not de novo review of the constitutional issue, but

10  rather, the only method by which we can determine whether a silent state court decision is

11  objectively unreasonable."  Times v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

12        Finally, if the state courts have not adjudicated the merits of the federal issue, no

13  AEDPA deference is given; the issue is reviewed *de novo* under general principles of federal law.

14  James v. Ryan, ___ F.3d ___, 2012 WL 639292 *18-19 (9th Cir. 2012).

15        A challenge to jury instructions does not generally state a federal constitutional

16  claim.  See Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983); see also Middletown v.

17  Cpp, 768 F.2d 1083, 1085 (9th Cir. 1985).  Habeas corpus is unavailable for alleged error in the

18  interpretation or application of state law.  Estelle v. McGuire, 502 U.S. 62, 112 S. Ct. 475

19  (1981); see also Lincoln v. Sunned, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. House wright,

20  786 F.2d 1378, 1381 (9th Cir. 1986).  The standard of review for a federal habeas court "is

21  limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United

22  States (citations omitted)."  Estelle v. McGuire, 502 U.S. at 68, 112 S. Ct. at 480.  In order for

23  error in the state trial proceedings to reach the level of a due process violation, the error had to be

24  one involving "fundamental fairness."  Id. at 73, 112 S. Ct. at 482.  The Supreme Court has

25  defined the category of infractions that violate fundamental fairness very narrowly.  Id. at 73, 112

26  S. Ct. at 482.

The operative issue here is the allegation that the trial court erred in not

instructing on the theory of the defense.  If evidence exists upon which a reasonable juror could

find for petitioner, it is constitutional error not to instruct on that defense if requested by the

defense.  Beardslee v. Woodford, 358 F.3d 560, 577-78 (9th Cir. 2002); Bradley v. Duncan, 315

F.3d 1091, 1099 (9th Cir. 2002).  In cases governed by AEDPA, such a violation is not actionable

unless it caused substantial prejudice.  Id. See Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.

Ct.1710 (1993).

The state appellate court analyzed this claim of petitioner's cogently, as follows:

> [] **Instruction on Involuntary Intoxication**
> Prior to closing arguments, defense counsel advocated giving a jury
> instruction on involuntary intoxication (CALCRIM No. 3427),[FT
> 4][6] asserting that defendant took the Valium pills as a painkiller,
> without knowing of their potentially intoxicating effects.  The trial
> court denied the request, stating that defendant could not claim that
> he did not know of the side effects of a drug when uncontradicted
> evidence showed that he had illegally purchased it off the street.
>
> However, the court did give a series of defense-oriented
> instructions, which explained the concepts of mental impairment,
> voluntary intoxication, voluntary intoxication causing
> unconsciousness, and hallucination.
>
> Defendant argues the trial court erred in denying his request for a
> jury instruction on involuntary intoxication.  Although he admits
> that he voluntarily ingested alcohol and benzodiazepines,
> defendant claims that the instruction was warranted because there
> was evidence that the combination of the two unexpectedly caused
> a pathological condition resulting in violent behavior.  The claim is
> unavailing.
>
> A court need only give a requested instruction "if the defendant
> proffers evidence sufficient to 'deserve consideration by the
> jury....'" (*People v. Barrick* (1982) 33 Cal.3d 115, 132, 187
> Cal.Rptr. 716, 654 P.2d 1243.)  However, if the evidence is
> minimal and unsubstantial, the instruction need not be given.
> (*People v. Flannel* (1979) 25 Cal.3d 668, 684-685, 160 Cal.Rptr.

---

[6] [Footnote 4]: "CALCRIM No. 3427 provides in relevant part that: "A person is
*involuntarily intoxicated* if he or she unknowingly ingested some intoxicating liquor, drug, or
other substance, or if his or her intoxication is caused by the force, duress, fraud, or trickery of
someone else, for whatever purpose[, without any fault on the part of the intoxicated person]."
Velazquez, 2010 WL 2913042  [emphasis in  state appellate court opinion].

84, 603 P.2d 1.) "In other words, '[t]he court should instruct the jury on every theory of the case, but only to the extent each is supported by substantial evidence.'" (*Id*. at p. 685 & fn. 12, 160 Cal.Rptr. 84, 603 P.2d 1.)

*3 "'[W]here the intoxication is induced through the fault of another *and without any fault on the part of the accused*, it is generally treated as involuntary.'" *(People v. Velez* (1985) 175 Cal.App.3d 785, 796, 221 Cal.Rptr. 631 (Velez ).) The dispositive question is whether the defendant knew or had reason to expect that his use of a particular substance could cause intoxicating effects. (*People v. Chaffey* (1994) 25 Cal.App.4th 852, 857, 30 Cal.Rptr.2d 757 (Chaffey ).) "[C]ourts have allowed the defense of involuntary intoxication based on the ingestion of an unlawful drug where the defendant reasonably believed he was consuming a lawful substance or where the unlawful drug was placed without defendant's knowledge *in a lawful substance*." (*Velez, supra*, 175 Cal.App.3d at p. 796, 221 Cal.Rptr. 631, citing *People v. Scott* (1983) 146 Cal.App.3d 823, 826-827, 194 Cal.Rptr. 633.) The defense has also been allowed in situations involving the knowing ingestion of legally prescribed medications which resulted in unforeseen side effects causing unconsciousness. (See *People v. Baker* (1954) 42 Cal.2d 550, 575, 268 P.2d 705; *Chaffey, supra*, 25 Cal.App.4th at p. 856, 30 Cal.Rptr.2d 757.)

However, the involuntary intoxication defense is not available to those who *voluntarily* consume alcohol or illegal drugs to the point of intoxication. These people are held responsible for their ensuing criminal acts, even if they were unconscious when they committed them. (*People v. Morrow* (1969) 268 Cal.App.2d 939, 949, 74 Cal.Rptr. 551 [alcoholic who takes his first drink by choice and successively drinks himself into a drunken state is not "involuntarily" intoxicated]; *Velez, supra*, 175 Cal.App.3d at pp. 795-796, 221 Cal.Rptr. 631 [involuntary intoxication defense not available to a defendant who voluntarily smoked marijuana cigarette furnished by others but was unaware it was laced with phencyclidine (PCP) ].)

Here, the trial court properly rejected defendant's request for an involuntary intoxication instruction. Defendant did not unknowingly consume a lawful substance "spiked" with an unlawful drug, nor did he knowingly ingest a legally prescribed medication that had unanticipated side effects producing unconsciousness. Rather, he intentionally exposed himself to excessive amounts of alcohol, along with Valium pills that he purchased off the street.

Defendant knew that consuming alcohol could have dangerous effects on his behavior, since he expressed concern to Dr. Globus about his history of alcohol-related blackouts. Defendant was also aware that he had episodes of blackouts and memory loss

associated with excessive alcohol consumption.  By consuming large quantities of alcohol along with an illegal street drug, defendant assumed the risk he would suffer serious and dangerous side effects.

As the court stated in *Velez*, "defendant cannot contend he was involuntarily intoxicated, because he had no right to expect the substance[s] he consumed [were] other than [they were] nor that [they] would produce an intoxicating effect different from the one [they] did." (*Velez*, *supra*, 175 Cal.App.3d at p. 796, 221 Cal.Rptr. 631.)

*4 For all of these reasons, we conclude the instruction on involuntary intoxication was properly refused.

People v. Velazquez, 2010 WL 2913042 at *2-*4 [emphasis in state appellate court opinion].

Petitioner contends that, while knowingly ingested the admittedly illegally obtained but "lawful" drug, along with voluntarily consuming copious amounts of alcohol, since he did not know that in combination the substances would have the effect of producing unconsciousness, an involuntary intoxication instruction is warranted.  Id.  In his petition for review petitioner does not fully set forth the federal basis for this claim merely seeking therein to preserve the issue of whether the denial of the instruction violated his constitutional right to due process and a fair trial.  Petition, p. 16.  He cites no federal case authority in support of his claim in his federal petition but in his traverse he cites three cases:  Martin v. Ohio, 480 U.S. 228, 233-234, 107 S. Ct. 1913 (1987) (finding that jury instructions, including self-defense instructions, did not shift burden to defendant to disprove any element of state's case and that they were "adequate to convey to the jury that all of the evidence, including the evidence going to self-defense, must be considered in deciding whether there was a reasonable doubt about the sufficiency of the State's proof of the elements of the crime"); Guthrie v. Warden, Maryland Penitentiary, 683 F.2d 820, 822-24 (4th Cir. 1982) (finding that while first-degree murder verdict rendered harmless the constitutional errors of voluntary intoxication instructions imposing burden on petitioner to negate criminal intent by proving he acted under heat of passion or in a state of extreme intoxication, but determining burden-shifting of self-defense instructions

1    required reversal); and Ho v. Carey, 332 F.3d 587, [593,] 596 (9th Cir. 2003) (reversing

2    conviction where court's instruction as to the elements of second degree murder based on

3    implied malice were erroneous under state law and violated the constitution where instruction

4    allowed jury to convict Ho of second-degree murder if he had the general intent to commit the

5    crime.). See Traverse, pp. 3-4.

6              These cases are not of particular relevance to petitioner's claim.  To the extent

7    petitioner is claiming state law error by the trial court's failure to give a jury instruction on

8    involuntary intoxication, there is no relief available from this court.  See Rios v. Clay, 2008 WL

9    4907216 at * 12 (C.D. Cal. Nov. 12, 2008) ("to the extent petitioner merely claims that the trial

10   court's failure to instruct the jury on involuntary intoxication was erroneous under state law, his

11   claim is not cognizable on federal habeas review.")   As more recently re-emphasized by the

12   Supreme Court, "'a mere error of state law ... is not a denial of due process.'"  Rivera v. Illinois,

13   556 U.S. 148, 129 S. Ct. 1446, 1454 (2009) (quoting Engle v. Isaac, 456 107, 121, n. 21, 102 S.

14   Ct. 1558 [] (1982)).

15             Federal circuit courts have noted that it is primarily state, and not federal, courts

16   which have dealt with the involuntary intoxication defense.  United States v. Bindley, 157 F.3d

17   1235, 1241 (10th Cir. 1998) ("The defense of involuntary intoxication has received relatively

18   little attention from the federal courts.  However, it has long been recognized, in various forms,

19   by state courts"); United States v. F.D.L., 836 F.2d 1113, 1116 (8th Cir. 1988) ("The courts

20   dealing with this issue, nearly all of them state courts, have defined involuntary intoxication in

21   essentially the same terms as insanity.  Like insanity, involuntary intoxication diminishes the

22   culpability of a crime.").  In United States v. Burnim, 576 F.2d 236 (9th Cir. 1978), the Ninth

23   Circuit affirmed the conviction on appeal of a defendant who claimed an insanity defense where

24   his drinking was found to be voluntary.  As noted in United States v. Henderson, 680 F.2d 659,

25   664  (9th Cir.1982), Burnim recognized that "in order to constitute a defense, insanity must be

26   the result of circumstances beyond the control of the actor."  The Tenth Circuit has noted that the

involuntary intoxication defense has generally been recognized in four different circumstances:

> (1) where the intoxication was caused by the fault of another (i.e., through force, duress, fraud, or contrivance); (2) where the intoxication was caused by an innocent mistake on the part of the defendant; (3) where a defendant unknowingly suffers from a physiological or psychological condition that renders him abnormally susceptible to a legal intoxicant (sometimes referred to as "pathological intoxication"); and (4) where unexpected intoxication results from a medically prescribed drug. [Citations omitted].   Although these widely varying circumstances make it difficult to formulate a comprehensive definition of the defense, it is apparent that a key component is lack of culpability on the part of the defendant in causing the intoxication. It is not surprising, then, that Bindley has cited no cases, and our research has produced none, in which the defense has been recognized where a defendant has knowingly ingested an illegal substance.

> Velez, the California case cited by the district court, highlights why the involuntary intoxication defense has not been recognized in situations involving voluntary ingestion of illegal substances. In Velez, the defendant voluntarily smoked a marijuana cigarette given to him by others at a social gathering.  Unbeknown to Velez, the cigarette contained PCP. Velez assaulted an elderly victim after he smoked the cigarette and was arrested and criminally charged. The two officers who arrested Velez testified at trial they thought he was under the influence of PCP.  In addition, a psychologist and a psychiatrist testified his behavior was consistent with PCP ingestion.  Notwithstanding this testimony, the jury convicted Velez of assault with a deadly weapon. On appeal, the California Court of Appeals concluded Velez was not entitled to any instructions on the defense of involuntary intoxication.

United States v. Bindley, 157 F.3d at 1242.

As noted before, a defendant is entitled to an instruction concerning the theory of the defense, but the theory must have sufficient evidence, in accordance with *state law,* to constitute a violation.  In ruling against the involuntary intoxication instruction, the trial court noted that the evidence regarding whether petitioner even took the illegally acquired Valium for pain had not been admitted for the truth and therefore the record does not even reflect the threshold premise of petitioner's claim herein that he took the Valium for pain.[7]  "[T]he problem

---

[7] Dr. Globus testified that petitioner told him that "he understood the Valium was for pain"; however, as the doctor stated "Valium ... does not block pain."  RT 597.

1   is, the statement that the defendant was taking the pills for pain came from Dr. Globus, which is

2   not coming in for the truth of the matter, and I just don't see how that instruction applies here.

3   He voluntarily took those drugs." RT, vol. IV, p. 1125 (quoting trial judge).

4          Petitioner believes he was entitled to an involuntary intoxication instruction

5   because he voluntarily took admittedly illegally obtained Valium for what he contends is its

6   purpose and voluntarily combined it with alcohol but he was unwitting as to the devastating

7   effect of its combination.  He argues that his situation is not analogous to that of an individual

8   who he concedes is rightfully denied the involuntary intoxication defense when that person

9   consumes alcohol or illegal drugs to the point of intoxication and/or unconsciousness.  Traverse,

10   pp. 3-4.  Petitioner argues that while he knew alcohol consumption could have dangerous effects

11   on his behavior because he had expressed concern to Dr. Globus about alcohol-related blackouts

12   but "had no idea" that taking Valium and drinking could have resulted in violence as his previous

13   alcohol problem had included no violence.  Id., at 4.

14          Petitioner misconstrues the law resulting in his specious reasoning.  The question

15   is not, even under state law, whether the drug itself was an illegal substance, but whether it was

16   illegally obtained, which would have the same meaning as an illegal substance in that it was, for

17   all intents and purposes, unprescribed to petitioner and therefore, an illegal drug for him.  As the

18   state appellate court reasoned,[8] the involuntary intoxication defense cannot be available for

19   petitioner who knowingly consumed both an illegally obtained substance and alcohol whether he

20   was aware that the mix could render him intoxicated to the point of unconsciousness of his

21   actions because, in doing so, he assumed the risk of the outcome.  Petitioner was therefore

22   reasonably held, in these circumstances, to have assumed the risks of the criminal behavior in

23

24          [8] Because the California Supreme Court was silent as to why petitioner's habeas petition
     was denied, it is permissible to "look through" its decision to the last reasoned state court
25   decision, which was that of the Second Appellate District. Ylst v. Nunnemaker, 501 U.S. 797,
     803-04, 111 S. Ct. 2590 (1991) ("Where there has been one reasoned state judgment rejecting a
26   federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest
     upon the same ground."); Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000).

which he engaged and no clearly established Supreme Court authority holds otherwise.

The state appellate court correctly noted that the trial court amply provided jury instructions with respect to petitioner's mental state and the mitigating effect of intoxication, providing instruction not only as to the elements of first (on either willful, deliberate and premeditated theory or felony-murder theory) and second degree murder, but also an instruction as to involuntary manslaughter.  See, e.g., RT, vol. V, p. 1232-1233:

> Involuntary manslaughter has been proved if you find beyond a reasonable doubt that:
> One, the defendant killed without legal justification or excuse;
> Two, the defendant did not act with the intent to kill;
> Three, the defendant did not act with a conscious disregard for human life; and
> Four, as a result of voluntary intoxication, the defendant was not conscious of his actions or the nature of those actions.
> The People have the burden of proving beyond a reasonable doubt that the defendant was not unconscious.  If the people have not met this burden, you must find the defendant not guilty of murder.
> A hallucination is a perception not based on objective reality. In other words, a person has a hallucination when that person believes that he or she is seeing or hearing or otherwise perceiving something that is not actually present or happening.
> You may consider evidence of hallucinations, if any, in deciding whether the defendant acted with deliberation and premeditation.
> The People have the burden of proving beyond a reasonable doubt that the defendant acted with deliberation and premeditation.
> If the People have not met this burden, you must find the defendant not guilty of first degree murder.
> You have heard evidence that the defendant may have suffered from a mental disease or defect or disorder.
> You may consider this evidence only for the limited purpose of deciding whether at the time of the charged crime the defendant acted with the intent or mental state required for that crime.
> The People have the burden of proving beyond a reasonable doubt that the defendant acted with the required intent or mental state, specifically malice aforethought, deliberation or premeditation the intent to commit a robbery.
> If the People have not met this burden, you must find the defendant not guilty of murder.

Not only does petitioner fail to provide Supreme Court authority clearly establishing a mandate under the constitution for instructions on intoxication, the existing authority suggests otherwise.  See Montana v. Egelhoff, 518 U.S. 37, 40, 43, 51, 56, 116 S.Ct.

14

2013 (1996) (holding Montana statute banning consideration of voluntary intoxication in determining whether accused was in possession of the requisite mental state that is an element of a criminal offense does not violate Due Process Clause).  While in a military case, an involuntary intoxication defense has been recognized, it is not apt in circumstances where, as here, the intoxicating substance is voluntarily ingested.  United States v. Ward, 14 M.J. 950 (1982) (where defendant consumed an illegal substance which he was unaware was laced with a different illegal substance which caused his criminal conduct, resulting intoxication is not rendered non-culpable).  In the instant case, petitioner voluntarily ingested an illegally obtained substance in combination with admittedly copious amounts of alcohol resulting in a reaction that he contends he could not have anticipated, notwithstanding that he was apparently aware that his alcohol consumption alone had had deleterious effects on him in the past.  It may well be that petitioner miscalculated the effect of the pills and alcohol, but he was well-aware of what he was ingesting.  Moreover, even if the omission were erroneous, which petitioner is far from showing, there is no demonstration that the omission, in the context of the entire trial, constituted a denial of fundamental fairness and due process.  The state appellate court's decision was not an unreasonable application of clearly established Supreme Court authority.  The petition should be denied.

Accordingly, IT IS ORDERED that the Clerk of the Court substitute Acting Warden P.D. Brazelton in place of the previously named warden, James A. Yates, as respondent in the docket of this matter.

IT IS RECOMMENDED that the petition be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

1   shall be served and filed within fourteen days after service of the objections.  The parties are

2   advised that failure to file objections within the specified time may waive the right to appeal the

3   District Courts order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

4   DATED: October 19, 2012

5

6                                   /s/ Gregory G. Hollows
                        UNITED STATES MAGISTRATE JUDGE

7   GGH:009/vela1461.hab

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26